**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Alison L. Mangiatordi (AL 1020)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative*
*Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SHAHEED DICKERSON, ALONZO JOHNSON, JUAN CARRASQUILLO, and SEAN BRUNSON, Individually and on Behalf of All Putative Class Members,**<br><br>                              **Plaintiffs,**<br><br>-against-<br><br><br>**GENUINE PARTS COMPANY d/b/a NAPA AUTO PARTS,**<br><br>                    **Defendant.** | **CLASS ACTION COMPLAINT**<br><br>5:23-cv-00780 (FJS/TWD)<br><br>**Jury Trial Demanded** |

Shaheed Dickerson, Alonzo Johnson, Juan Carrasquillo and Sean Brunson (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

1

**NATURE OF THE ACTION**

1. Plaintiffs worked in positions as warehouse associates and receiving associates, whereby they engaged in manual work in their course of their employment with defendant Genuine Parts Company d/b/a Napa Auto Parts ("Napa" or "Defendant"). For their work, they were paid their wages on a bi-weekly basis.

2. New York Law requires that companies pay their manual workers on a weekly basis unless they receive an express authorization to pay on a semi-monthly basis from the New York State Department of Labor ("NYS DOL") Commissioner. *See* New York Labor Law ("NYLL"), Article 6, § 191(a).

3. Defendant has not received authorization from the NYS DOL Commissioner to pay its manual workers on a bi-weekly basis. *See* https://dol.ny.gov/system/files/documents/2023/06/employers-authorized-to-pay-manual-employees-on-a-biweekly-basis.pdf.

4. Despite being manual workers, Defendant has failed to properly pay Plaintiffs and their other employees in the State of New York that engage in manual work in the course of their employment ("Manual Workers") their wages within seven (7) calendar days after the end of the week in which these wages were earned.

5. In this regard, Defendant has failed to provide timely wages to Plaintiffs and Manual Workers, in violation of NYLL § 191.

6. Plaintiffs therefore bring this action on behalf of themselves and all other Manual Workers employed by Defendant in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the NYLL, Article 6, §§ 190 *et seq*.

## JURISDICTION AND VENUE

7.    This Court has personal jurisdiction over Defendant because Defendant conducts business in New York. Defendant owns and operates numerous auto parts locations within New York.

8.    This Court has subject matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

9.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and Defendant conducts business in this District.

10.    On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June

6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiffs:**

11.    Underline Plaintiff Shaheed Dickerson ("Dickerson") was, at all relevant times, an adult individual residing in Onondaga County, New York.

12.    Dickerson was employed by Defendant from in or around June of 2019 until in or around July of 2022 as a warehouse associate and from in or around August of 2022 until on or about June 5, 2023 as a back manager.

13.    During Dickerson's employment, over twenty-five percent (25%) of his duties were physical tasks.

14.    When Dickerson was a warehouse associate, his duties included, but were not limited to: (1) pulling product; (2) stocking product; (3) making sure product went where it was supposed to go; and (4) cleaning.

15.    When Dickerson was a back manager, his duties included, but were not limited to: (1) loading products onto trucks; (2) checking products already loaded onto the trucks; (3) pulling parts; and (4) cleaning.

4

16.     <u>Plaintiff Alonzo Johnson</u> ("Johnson") was, at all relevant times, an adult individual residing in Onondaga County, New York.

17.     Johnson was employed by Defendant from in or around February 8, 2021 until in or around March of 2021 as a warehouse associate and from in or around April of 2021 until on or about March 2, 2023 as a warehouse manager.

18.     During Johnson's employment, over twenty-five percent (25%) of his duties were physical tasks.

19.     When Johnson was a warehouse associate, his duties included, but were not limited to: (1) pulling product; (2) stocking product; (3) making sure product went where it was supposed to go; and (4) cleaning. Defendant's description of Johnson's position as a warehouse/stock room associate, as set forth above, and in Exhibit A**.**

20.     When Johnson was a warehouse manager, his duties continued to include the above duties as a warehouse associate and also included overseeing and physically correcting the work of the warehouse associates he managed.

21.     <u>Plaintiff Sean Brunson</u> ("Brunson") was, at all relevant times, an adult individual residing in Onondaga County, New York.

22.     Brunson was employed by Defendant from in or around September of 2022 until in or around March of 2023 as a receiving warehouse associate.

23.     During Brunson's employment, over twenty-five percent (25%) of his duties were physical tasks.

24.     Throughout Brunson's employment, his duties included, but were not limited to: (1) pulling product; (2) stocking product; (3) putting away freight in the warehouse; (4) receiving mail; (5) delivering mail; and (6) cleaning.

25.    Plaintiff Juan Carrasquillo ("Carrasquillo") was, at all relevant times, an adult individual residing in Onondaga County, New York.

26.    Carrasquillo was employed by Defendant from in or around November of 2021 until in or around March of 2023 as a warehouse associate.

27.    During Carrasquillo's employment, over twenty-five percent (25%) of his duties were physical tasks.

28.    Throughout the Carrasquillo Employment Period, Carrasquillo's duties included, but were not limited to: (1) pulling product; (2) stocking product; (3) making sure product went where it was supposed to go; and (4) cleaning

29.    Throughout their respective employment periods with Defendant, Plaintiffs were paid their wages every other week, rather than weekly.

30.    Thus, for half of each biweekly pay period, Plaintiffs were injured in that they each were temporarily deprived of money owed to them, and they could not invest, earn interest on, or otherwise use these monies that were rightfully theirs.

31.    Throughout the relevant time period, Plaintiffs performed work for Defendant at Napa Auto Parts, located at 411 N Midler Ave, Syracuse, NY 13206.

32.    Plaintiffs are each covered employees within the meaning of the NYLL.

**Defendant:**

33.    Defendant Genuine Parts Company d/b/a Napa Auto Parts is a foreign business corporation organized and existing under the laws of Georgia.

34.    Defendant's principal executive office is located at 2999 Circle 75 Parkway, Atlanta, GA 30339.

35.    Defendant was and is a covered employer within the meaning of the NYLL, and at

all times, employed Plaintiffs and similarly situated employees.

36.     Defendant has maintained control, oversight, and direction over Plaintiffs and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

37.     Defendant applies the same employment policies, practices, and procedures to all Manual Workers in its operation, including policies, practices, and procedures with respect to payment of wages.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

38.     Pursuant to the NYLL, Plaintiffs bring their First Cause of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons who work or have worked as warehouse associates, receiving associates, stock associate, retail associate, parts counter associates, dock loader, class clerk, warehouse supervisor, associate warehouse manager, warehouse manager, counter clerk, assistant store manager, store manager, retail manager, putwall department associates, tag out department associates, inventory department associates, pulling department associates, cores department associates, IGN department associates, main store associates, and in other hourly positions in warehouse and/or retail parts stores for Genuine Parts Company in New York from November 10, 2016 through the date of final judgment in this matter (the "Class" or "Class Members").

39.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendant. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

40.     The Class Members are so numerous that joinder of all members is impracticable.

41.     Upon information and belief, there are in excess of forty (40) Class Members.

42.     The questions of law and fact common to the Class predominate over any questions

solely affecting the individual members of the Class. These common questions include, but are not limited to:

   a.   whether Defendant employed Plaintiffs and the Class Members within the meaning of the NYLL;

   b.   whether Defendant correctly compensated Plaintiffs and the Class Members on a timely basis;

   c.   whether Defendant's failure to properly and timely pay Plaintiff and the Class Members violated NYLL § 191; and

   d.   whether Defendant is liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

43.    Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, were hourly workers of Defendant who worked for Defendant pursuant its corporate policies. Plaintiffs, like all Class Members, did not receive timely payment of their wages. If Defendant is liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

44.    Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

45.    Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

46.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

47.    Defendant is sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit against the corporate defendant. The individual members of the class have no interest or capacity to bring separate actions; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action. Thus, Plaintiffs are unaware of any other currently pending litigation concerning this controversy.

## ADDITIONAL FACTUAL ALLEGATIONS

48.    Throughout the relevant time period, Defendant maintained a corporate policy of paying its hourly employees in its parts stores and/or warehouses on a bi-weekly basis, without regard for whether these employees were "manual workers" as defined by New York law.

49.    Defendant's description of the "warehouse associate" position highlights its manual nature:

> "You will receive, stock, pull, stage load and ship freight…Check, verify, load, stock and pull inventory…Unpack incoming parts shipments…Cleans up and disposes boxes, packing material, and pallets…Operates warehouse machinery….
> Capable of lifting and moving parts of up to 75 pounds and push/pull 300 pounds using hitch-and-go dolly…Able to repeatedly bend or stoop…Ability to bend, twist, squat, climb, push and pull and move at a quick speed of pace…."

**Exhibit A.**

50.    Likewise, Defendant's description of the "receiving warehouse associate" position highlights its manual nature:

> "Unloads shipments…transports shipments…to a proper location throughout the stock room…Distributes, sorts, and records shipments….Assists in the unloading of returned merchandise from stores…and transports merchandise to check-in areas….Capable of lifting and moving boxes of up to 60 pounds …Able to repeatedly bend or stoop…Ability to move engine blocks, core barrels, and other heavy equipment…."

**Exhibit B.**

51.     Despite regularly spending more than twenty-five percent (25%) of their shift performing these physical tasks, Plaintiffs and Class Members have been compensated by Defendant on a bi-weekly, rather than weekly basis, during the entirety of their employment with Defendant and were therefore underpaid.

52.     Thus, for half of each biweekly pay period, Plaintiffs and Class Members were injured in that they was temporarily deprived of money owed to them, and they could not invest, earn interest on, or otherwise use these monies that were rightfully theirs.

53.     Accordingly, every day that said money was not paid to them in a timely fashion, Plaintiffs and Class Members lost the time value of that money and were underpaid.

54.     Moreover, Plaintiffs had several bills that would often go unpaid for a week until they received their bi-weekly pay which caused them financial stress and strain. These bills included Plaintiffs' rent and phone bills. Specifically, Plaintiffs would occasionally be late in paying rent and car insurance bill and would sometimes incur late fees for these bills or have to request an extension of time to pay the bills until they received their pay from Defendant.

### FIRST CAUSE OF ACTION
### <u>NEW YORK LABOR LAW – FAILURE TO PAY TIMELY WAGES</u>
#### (Brought on Behalf of Plaintiffs and the Class Members)

55.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

56.     The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendant and protect Plaintiffs and the Class Members.

57.     Defendant failed to pay Plaintiff and the Class Members on a timely basis as required by NYLL § 191(1)(a), which resulted in Plaintiffs and the Class Members being underpaid.

58.     Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendant the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest, as provided for by NYLL § 198

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Class Members, respectfully request that this Court grant the following relief:

a.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

b.     An order tolling the statute of limitations;

c.     A declaratory judgment that the practices complained of herein are unlawful under the NYLL;

d.     An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendant, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.     An award of liquidated and/or punitive damages as a result of the Defendant's willful failure to timely pay wages pursuant to the NYLL and supporting regulations;

f.      An award of prejudgment and post-judgment interest;

g.      An award of costs and expenses of this action together with reasonable attorneys'
and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.


Dated: New York, New York
       June 26, 2023

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
Alison L. Mangiatordi (AL 1020)
mangiatordi@peltongraham.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative
Class*

# EXHIBIT A

 

Home  My Network  Jobs  Messaging  Notifications  Me ▾  For Business ▾  Try Premium free



# NAPA Syracuse - Warehouse Associate (Full-Time)

NAPA Auto Parts    Syracuse, NY (On-site)

💼 $17.50/hr (from job description) · Full-time · Entry level

🏢 10,001+ employees · Retail

💡 See recent hiring trends for NAPA AUTO PARTS. Try Premium for free

⛔ No longer accepting applications

## About the job

**Starting pay $17.50 per hour with scheduled increases in first 12 months!**

We are a Parts Store and SO much more and we are looking for even *more* great talent to join our NAPA family! We have lots of parts available to our customers and this role as a **Warehouse Associate** plays a major part in getting these parts from our warehouse/stockroom to our stores. Think about how great you will feel in knowing that you made a difference in someone's life by getting them the part(s) that they needed from our warehouse!

**What you'll be doing:**

- Expedite incoming and outgoing freight in our NAPA Distribution Center Warehouse. You will receive, stock, pull, stage, load and ship freight.
- Process inventory and maximize warehouse space usage
- Check, verify, load, stock and pull inventory to meet store and customer orders.
- Unpack incoming parts shipments from suppliers.
- Pulls all orders for standard customer store orders, special orders, and the demands of the main counter and will-call accurately and as completely as possible, routing products as appropriate and meeting the prescribed picking quota set by management.
- Uses the electronic scan-gun, reviews out-bound customer orders for pulling accuracy, ensures safe packing of the orders for shipment to customers, and properly labels shipping trays/packages in accordance with D.O.T. standards and hazardous material regulations and procedures.
- Cleans up and disposes boxes, packing material, and pallets, as well as general housekeeping of facility and specific product line areas. Follows and adheres to all safety rules including the handling of hazardous materials. Loads customer orders into delivery trucks in proper sequence and according to freight bills.
- Perform daily inspections of appropriate motorized and manual equipment which includes lift gate, pallet jack and hand truck, radio frequency scanners and printers.
- Operate warehouse machinery in accordance with established safety procedures as needed to maintain the warehouse stock.
- Verify and complete required documentation and reports.

**This is the right opportunity for you if you:**

- Genuinely enjoy working in warehouse environments with a team that makes a difference
- Love the hustle – Our warehouses are busy, yet fun places!
- Want to join a team where you can learn and grow your career – the opportunities are endless at NAPA!
- Have availability to work between the hours of 7AM-8PM M-F with occasional weekend work

**What you'll need:**

- Previous experience in a distribution center and/or warehouse environment – Awesome if you have ever used RF scanning equipment - Not a deal breaker if you don't have this.
- Capable of lifting and moving parts of up to 75 pounds and push/pull 300 pounds using hitch-and-go dolly. Able to push/pull up to 300 lbs. using mechanical aids, such as hand trucks, barrel dollies, hydraulic lifts, etc.
- Able to move engine blocks and other heavy equipment with moving aids designed to move such items, including hand trucks, dollies, motorized carts, pallet jacks, etc.
- Able to repeatedly bend or stoop to ground level shelves and be able to reach upper shelves (8 feet) with the use of stool or ladder when necessary.
- Understanding and recognizing part numbers and line codes to ensure proper identification of parts for placement in the facility, including identifying sequence of numbers and letters accurately and rapidly.
- Basic understanding and capable of operating a computer terminal.
- Able to write legibly and be able to read, understand written/verbal instructions, and communicate to other team members.
- Ability to bend, twist, squat, climb, push and pull and move at a quick speed of pace
- Must be able to work in a drug free atmosphere.

What's in it for you:

- Awesome people and brand
- Competitive Pay
- Outstanding health benefits and 401K
- Stable company. Fortune 200 with a "family" feel
- A Culture of promotion from within, using your creativity, finding solutions/fixes, and where no 2 days or career paths are the same!
- Great training, and ongoing development with support from multiple leaders/your team

If this role sounds like a fit, please take the time to complete our super quick and easy application. We are excited and humbled that you are considering NAPA as hopefully your future employer.

Next Steps:

Please apply if you think this is a great fit for you and we will be in touch! If you decide that this role is not for you, please check out some of our other great careers by visiting jobs.genpt.com

See less ∧

---

### Set alert for similar jobs

Warehouse Associate, Syracuse, NY

🔔 Set alert

---

### Pay found in job post

Retrieved from the description.

Is this accurate?   Yes  /  No

Base salary
$17.50/hr (from job description)

---

### About the company

 **NAPA Auto Parts**
71,800 followers

+ Follow

Retail • 10,001+ employees • 10,380 on LinkedIn

More than 90 years ago, the National Automotive Parts Association (NAPA) was created to meet America's growing need for an effective auto parts distribution system.

Today, 91% of do-it-yourself customers recognize the NAPA brand name....  ... show more

Show more

---

## More jobs



**Warehouse Inventory Associate**
The Willamette Valley Company...
Eugene, OR (On-site)

1 week ago   22 applicants



**Forklift Operator**
Candlewood East Marina
Brookfield, CT (On-site)

 Actively recruiting

1 week ago   7 applicants
 Easy Apply



**Warehouse Associate**
KMK Promotional Sales, LLC
Solon, OH (On-site)

4 weeks ago   18 applicants
Easy Apply



**Warehouse Associate**
Luxe Productions
Arlington Heights, IL (On-site)

1 day ago   17 applicants
Easy Apply

# EXHIBIT B

       

Home | My Network | Jobs | Messaging | Notifications | Me ▾ | For Business ▾ | Try Premium free



## Receiving Associate - DC

NAPA Auto Parts · Albuquerque, NM (On-site) · 1 week ago

 Full-time · Entry level

 10,001+ employees · Retail

Apply        **Save**

## About the job

**Job Description**

The Receiving Associate will unload shipments, verify, and transport items to the appropriate location in the Distribtuion Center.

**Responsibilities**

- The following section contains the primary responsibilities for this position. Job holder is responsible for performing any other duties as assigned by management.
- Unloads shipments, verifies the accuracy of shipments and transports shipments (using a variety of methods) to proper location throughout the stockroom.
- Records all incoming shipments on receiving log.
- Distributes, sorts, and records shipments received via UPS, UPS, Federal Express, etc. Delivers next day airmail immediately upon receipt.
- Handles Pro Point repair and returns.
- Ships W.O.G. and cross docks to jobbers.
- Assists in the unloading of returned merchandise from stores, verifies accuracy of piece count, and transports merchandise to check-in areas.
- Performs any and all management assigned duties.

**Qualifications**

- High School Diploma or equivalent work experience required.
- 6 months prior work experience.
- Have a working knowledge of the entire stockroom.
- Ability to work in a fast paced setting and have the capability to work calmly under pressure.
- Ability to communicate with customers, supervisors, and other Will Call employees.
- Possess personal drive, self-motivation and initiative to accomplish company goals.
- Possess a willingness and ability to learn.
- Possess analytical problem solving skills.
- Ability to work flexible hours, sometimes including weekends and holidays as required by customer business needs.
- Ability to pass a drug screen test and routine background inquiry.
- Strong customer relationship skills.
- Ability to utilize and operate a RADS gun.
- Must be able to be certified as a forklift operator.
- Visually capable of recognizing and distinguishing letters and numbers and their sequencing.
- Ability to speak clearly and listen attentively.
- Ability to work on feet (stand and walk) for entire assigned work shift.
- Capable of lifting and moving parts and boxes up to 60 pounds.
- Ability to repeatedly bend or stoop to floor level shelves and able to reach upper shelves with use of stool or ladder when necessary.
- Ability to move engine blocks, core barrels, and other heavy equipment with moving aids designed to move such items, including hand truck, barrel dollies, hydraulic lifts, etc.

 **See less ︿**

## Set alert for similar jobs

Receiving Associate, Albuquerque, NM

 🔔 Set alert